## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOSETTE M. CHAMBERS,** | ) | |
| **Plaintiff,** | ) | **Case No.:** _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TENNESSEE FAIR HOUSING** | ) | **Jury Trial Requested** |
| **COUNCIL and TRACEY MCCARTNEY,** | ) | |
| **in her official capacity as its Executive** | ) | |
| **Director, and JOHN DOES 1-20,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW PLAINTIFF, JOSETTE M. CHAMBERS** ("Plaintiff"),

appearing *pro se*, and files this, her Complaint, as follows:

### I. NATURE OF ACTION, JURISDICTION AND VENUE

1. Plaintiff brings this action against Defendants to redress Defendants' wrongful termination of Plaintiff's employment. Plaintiff alleges that her termination in fact was based on Defendants' discrimination due to Plaintiff's race and disability, as well as Defendants' retaliation due to Plaintiff's engagement in protected activity as described hereinbelow.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims under the Tennessee Human Rights Act as embodied in T.C.A. §§ 4-21-101 *et seq.* and the Tennessee Public Protection "Whistleblower Act" pursuant to T.C.A. §§ 50-1-304 and the common law.

1

3.  Venue is proper in the Middle District of Tennessee (Nashville) pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c) because the events giving rise to the claims occurred within this district.  Defendants operate in the Middle District and, including a participatory Board of Directors that receives benefit as a result of those directors' work with Defendants, employs over 15 workers.

## II.  PROCEDURAL PREREQUISITES

4.  On or around January 5, 2012, Plaintiff caused to be filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the Tennessee Human Rights Commission ("THRC").  Attached to this Complaint and incorporated herein as "Joint Exhibit A," are copies of the original Charge and its amended versions.  On January 24, 2012, the EEOC issued its "Dismissal and Notice of Rights," a copy of which is attached hereto and by reference incorporated as "Exhibit B."

## III.  PARTIES

5.  Plaintiff is a female resident of Davidson County, Tennessee.

6.  At all times relevant hereto and upon Plaintiff's information and belief, the Tennessee Fair Housing Council ("TFHC") was, and still is, a private, non-profit housing discrimination advocacy organization funded by the U.S. Department of Housing & Urban Development, among other governmental agencies.

7.  Tracey McCartney ("McCartney") is the executive director of TFHC and is named as a defendant in this Complaint in that official capacity.

## IV. STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

8.   Plaintiff, an African-American female and 1984 graduate of the University of California's Hastings College of Law, was hired as staff attorney by Defendants TFHC and McCartney in March 2009.  Plaintiff's job duties consisted of advocacy and legal representation of TFHC complainants alleging housing discrimination.

9.   Plaintiff was diagnosed with breast cancer in November 2009; the cancer recurred in the form of a brain tumor in June 2011.  Importantly, although the cancer affected Plaintiff's ability to walk and reach without intense pain, Plaintiff remained able to perform essential functions of the staff attorney position for which she was hired.  Plaintiff still receives chemotherapy and other medication for her disability.

10.   At all times relevant to this case, McCartney, a White female, was Plaintiff's immediate supervisor.

11.   In addition to McCartney, Plaintiff worked directly with Tanya Gorham ("Gorham"), a "light" Puerto Rican (non-African-American) female whose education level is comprised of a GED.  Gorham served as TFHC's office manager prior to being promoted to a housing specialist position.  Gorham's job duties included client intake and data input, in connection with TFHC complainants seeking counsel or legal assistance.

12.   Davalyn Johnson, an African-American female who held a master's degree from the University of Southern California, was hired to replace Gorham as office manager.  Johnson resigned in or around October 2010.  Upon Plaintiff's information and belief, prior to her departure from TFHC, Johnson complained to HUD about McCartney's alleged race-based discrimination practices against herself and against the undersigned Plaintiff.

3

13. Plaintiff advised McCartney, Gorham and Johnson of Plaintiff's disability (cancer) on the very day she was diagnosed.

14. Defendants also were subject to a participatory board of directors comprised of approximately 15 individuals. Upon Plaintiff's information and belief, the board members received benefit from their work with Defendants including, but not limited to, training and access to methods for certification in the housing discrimination and real estate fields. Accordingly, Plaintiff contends that the members of TFHC's board of directors are employees for purposes of Plaintiff's Title VII and related Tennessee employment discrimination and retaliation claims.

15. Almost from the beginning of her employment with Defendants, McCartney subjected Plaintiff to a hostile environment.

16. Plaintiff believed McCartney's hostility was race-based because McCartney did not seem to treat Plaintiff's White professional peers (particularly, Carol Gish, a White attorney with whom McCartney worked closely) in the same manner.

17. Plaintiff did attempt to discuss what she perceived as intentional humiliation with McCartney on several occasions, stating at one time that she believed she was "sport" for McCartney and that McCartney seemed to want to put her in her place. Plaintiff, however, backed off to avoid risking her job given McCartney's general demeanor, constants threats of termination, and reminders that Tennessee was an "at will" employment state.

18. Examples of the intentional disparate treatment on part of McCartney that Plaintiff complained of include, but are not limited to the following:

4

a. McCartney's unceasing verbal assaults, intimidation, harassment of Plaintiff including insinuations that Plaintiff was inarticulate and incapable of writing grammatically correct documents and pleading ("I need to check for grammar."). Importantly, McCartney was aware that Plaintiff had over 25 years experience as a litigator in Illinois and Georgia prior to moving to Tennessee and that, among other things, Plaintiff was an editor of one of her law school's journals (The Hastings Constitutional Law Quarterly) and was published by the American Bar Association prior to attending law school.

b. On at least two occasions, McCartney approached Plaintiff to discuss the "incompetency" of an African-American professional woman known in Tennessee's housing discrimination arena and expressly stated her intention to cause that woman's professional demise. McCartney made similar statements about other non-White professionals with whom TFHC had to engage. McCartney never expressed that sentiment about White professionals with whom TFHC interacted.

c. In or around June 2010 and after returning to TFHC from a conference in New Orleans, McCartney advised Plaintiff that she'd discussed her alleged mismanagement of federal housing discrimination case by improperly drafting a case management order and that the consensus among the attorneys she'd talked to was that Plaintiff was incompetent and that her actions constituted malpractice. McCartney reprimanded Plaintiff, asking why Plaintiff should not be terminated. In fact, at that time McCartney had never practiced in federal court. Plaintiff, on the other hand, had done so for numerous years, and the end result in the case which Plaintiff primarily handled – despite being harassed and humiliated by McCartney throughout the process – was a

5

$70,000 settlement award for TFHC's client. It follows that in August 2011, McCartney changed her story entirely, stating that she actually had advised the parties' colleagues at the New Orleans conference that Plaintiff's alleged mismanagement of the above-described case concerned Plaintiff's failure to properly prove the element of disability, that being an obvious untruth and evidence of McCartney's obsession with harassing, intimidating and disparaging Plaintiff;

d. McCartney constantly advised Plaintiff that Plaintiff was "used to" preferential treatment given Plaintiff's employment history and such would not be allowed at TFHC. Accordingly, McCartney reprimanded Plaintiff in the presence and within earshot of Gorham and Johnson after Plaintiff asked Gorham to print a label, that being something Gorham always did. McCartney stormed into Plaintiff's office, threw the envelope on Plaintiff's desk and screamed that Gorham was "not a secretary!" McCartney went on to change the terms and conditions of Plaintiff's employment by directing Gorham to train Plaintiff in data input. McCartney also directed Gorham to give Plaintiff her data entry work to do. A copy of Plaintiff's memorialization of McCartney's official change in Plaintiff's job duties is attached hereto and herein by reference incorporated as "Exhibit C." This alteration in Plaintiff's job duties was permanent;

e. McCartney issued damaging write-ups and placing the write-ups in Plaintiff's personnel file. Her charges ranged from Plaintiff's "untimely" submission of timesheets although there was no stated deadline or other protocol regarding the submission of timesheets, and Plaintiff's missing a deadline on a housing discrimination writing project that Plaintiff had simply mentioned she wanted to do for "cathartic

reasons" given her recovery from cancer. In fact, McCartney issued a Notice of

Separation which was to be effective in December 2010 (if Plaintiff recalls correctly).

However, McCartney "cured" her intended adverse action by not terminating Plaintiff's

employment at that time;

      f. McCartney strategized with Gorham about cases. McCartney also

allowed Gorham to handle cases and communicate both verbally and in writing with

TFHC clients, opposing counsel and other case participants about the same. Plaintiff's

constant requests to handle TFHC's legal caseload as she was hired to do were ignored.

Plaintiff constantly advised both McCartney and Gorham that Gorham's participation

went well beyond doing intake and in fact constituted the unauthorized practice of law.

McCartney's hostile actions against Plaintiff escalated after Plaintiff made those

particular complaints;

      g. McCartney refused Plaintiff's numerous requests to handle mortgage

loan modification matters which Plaintiff understood were among the type of cases she

was to handle, among other things. McCartney stated that those matters were too

complex. In or around July 2011, Gorham, being upset that she had not been timely paid,

told Plaintiff that McCartney in fact had arranged for her to earn extra money by handling

mortgage loan modification cases for one of TFHC's board members;

      h. McCartney refused to allow Plaintiff to attend a week-long all-expense

paid training on mortgage loan modifications on company time and, instead, required

Plaintiff to reimburse TFHC for the time spent at the training; and,

      i. In July 2011, Gorham told Plaintiff that McCartney was "concerned"

that Plaintiff's cancer treatments had caused TFHC's insurance costs to rise.

19. In July 2011, Michele Rountree, a HUD auditor visited TFHC. Plaintiff and Rountree were discussing Johnson's earlier revelations of McCartney's disparate treatment of Johnson and Plaintiff when McCartney, apparently listening at the door, angrily burst into Plaintiff's office and accused Plaintiff of "assassinating [her] character." Rountree then advised Plaintiff to immediately contact HUD's regional office.

20. Plaintiff then responded in writing to McCartney's earlier charges and asked that McCartney place those responses in her personnel file.

21. On July 25, 2011, McCartney presented a memorandum containing charges which she stated evidenced "gross misconduct" on Plaintiff's part and, therefore, grounds for paid suspension until the end of business on August 15, 2011. McCartney's stated grounds for suspension included making disparaging comments about her to third parties and violating TFHC policy by engaging in outside work. Importantly, McCartney's charge against Plaintiff regarding disparaging comments to third parties involved the undersigned's actual discussions with Rountree and those discrimination complaints which McCartney expected Plaintiff to make to HUD officials. See "Joint Exhibit D which includes Plaintiff's final separation notice," attached hereto and by reference incorporated herein.

22. Two TFHC board members were present when McCartney handed Plaintiff the July 25, 2011 memorandum. They refused to hear Plaintiff's position advising instead that Plaintiff to file a grievance. Those board members then monitored Plaintiff's packing of her personal belongings, requested her office keys and escorted her to the door.

8

23. McCartney circumvented the grievance process by mandating Plaintiff's attendance at a mediation proceeding set for early August 2011. McCartney expressly advised Plaintiff that her failure to participate would result in an immediate "parting of ways." Not wanting to lose either a salary or medical benefits, those being crucial given Plaintiff's on-going medical treatment for cancer, Plaintiff complied in every single respect required by McCartney, including signing the agreement to not set foot on TFHC's premises from that August mediation until the effective termination date of December 31, 2011.

24. Under the Agreement, McCartney required Plaintiff to work from her home until the December 31, 2011 termination date. Plaintiff was not permitted to contact McCartney except by e-mail. Plaintiff, still handling a handful of cases, had no choice but to allow TFHC clients to call her on her home and cell phone. Further, when a client attempted to reach Plaintiff at TFHC, Plaintiff was reprimanded by McCartney.

25. McCartney also told Plaintiff that she and Gorham had conducted an investigation on Plaintiff. Plaintiff contends this was a retaliatory effort on their part to find "dirt" on Plaintiff despite the Tennessee Board of Professional Responsibilities grant of reciprocity after an exhaustive investigation of its own as well as McCartney's background investigation of Plaintiff prior to hiring Plaintiff for the position of staff attorney for TFHC.

26  In January 2012, Plaintiff discovered that McCartney herself was engaged in outside work as a housing law and computer consultant. A copy of McCartney's resume found on the internet and indicating that she had been so engaged since June 2009,

9

approximately four months after Plaintiff was hired by TFHC, is attached hereto and by reference incorporated herein as "Exhibit E."

27. Plaintiff's employment with TFHC in fact ended on December 31, 2011.

28. Plaintiff subsequently filed for unemployment benefits. McCartney's characterization of the grounds for termination as "gross misconduct" initially affected Plaintiff's right to those and other benefits. Plaintiff advised McCartney accordingly. McCartney responded that she'd change the characterization to "poor performance."

29. The Tennessee Department of Labor and Workforce Development issued its decision to pay of Plaintiff's unemployment benefits. Therein, it is stated that "[t]he employer has not provided sufficient evidence to prove the Claimant's actions constitute work-related misconduct." A copy of the decision is attached hereto and herein by reference incorporated as "Exhibit F."

30. As a direct result of Defendants' acts and omissions as described in this complaint, the undersigned, Plaintiff has suffered harm.

### FIRST CLAIM FOR RELIEF

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS OF 1964, as amended (Disparate Treatment, Discriminatory Discharge and Retaliation)

31. Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

32. Plaintiff brings this count against Defendants pursuant to Title VII of the Civil Rights Act of 42 U.S.C. §§ 2000 *et seq.* ("Title VII").

33. At all times, Defendants have employed 15 or more employees, including its Board of Directors who receive benefits from Defendants and, therefore, qualify as employees for purposes of federal and state employment discrimination laws. Consequently, the jurisdictional requisites of Title VII are met.

10

34. During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Title VII and, as such, Defendants are subject to the rules, regulations and penalties of that law.

35. Plaintiff, an African-American female, was at all times relevant hereto, qualified for her position with Defendants as staff attorney and satisfactorily met the normal requirements of that position to the extent that Defendants required her to continue working for them, albeit from her home, until her effective date of termination on December 31, 2011.

36. Plaintiff has fulfilled all conditions precedent to the initiation of this count. See Exhibits A and B.

37. By way of the actions and omissions described herein, Defendants violated Title VII by intentionally establishing, maintaining and perpetuating a racially hostile workplace environment through which discriminatory intimidation, ridicule and insults permeated. Further, these conditions were sufficiently severe and pervasive so as to result in an abusive working environment that altered the conditions of Plaintiff's employment and compromised her physical and emotional health.

38. Defendants' unlawful discriminatory conduct as to Plaintiff, including Defendants' termination of Plaintiff's employment, was made with malice and reckless indifference to her federally protected rights.

39. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

     a. Lost income;

     b. Lost benefits;

11

c.  Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

d.  Severe emotional anguish and distress, humiliation and embarrassment; and,

e.  Economic loss.

40.  The foregoing conduct violates Title VII of the Civil Rights Act of 1964, as amended.

41.  Plaintiff requests relief as provided in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF SECTION 1981, as amended
### (Harassment, Intentional Racial Discrimination, Retaliation)

42.  Plaintiff incorporate Paragraphs 1 through 30 as alleged above

43.  Plaintiff brings this count against Defendants pursuant to 42 U.S.C. § 1981, as amended (Section 1981).

44.  During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 1981, and as such Defendants are subject to the rules, regulations and penalties of that law.

45.  Plaintiff, an African-American female, was at all times relevant hereto, qualified for her position with Defendants as staff attorney and satisfactorily met the normal requirements of that position to the extent that Defendants required her to continue working for them, albeit from her home, until her effective date of termination on December 31, 2011.

46.  By way of the actions described herein, Defendants intentionally discriminated against Plaintiff on the basis of Plaintiff's race by changing the terms and

12

conditions of her employment; subjecting her to harassment, intimidation and extreme humiliation; and, retaliating against her for reporting the illicit activity on part of both Gorham and McCartney (in allowing Gorham to engage in the unauthorized practice of law) and discussing her discrimination claims with HUD officials.

47. Further, these conditions were sufficiently severe and pervasive so as to result in an abusive working environment that altered the conditions of Plaintiff's employment and compromised her physical and emotional health.

48. Defendants' unlawful discriminatory conduct as to Plaintiff, including Defendants' ultimate termination of her employment, was made with malice and reckless indifference to her federally protected rights.

49. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

    a. Lost income;

    b. Lost benefits;

    c. Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

    d. Severe emotional anguish and distress, humiliation and embarrassment; and,

    e. Economic loss.

50. The foregoing conduct violates 42 U.S.C. § 1981, as amended.

51. Plaintiff requests relief as provided in the Prayer for Relief.

13

## THIRD CLAIM FOR RELIEF

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973,
### as amended
### (Disability-based Discrimination)

52. Plaintiff incorporate Paragraphs 1 through 30 as alleged above

53. Plaintiff brings this count against Defendants pursuant to Section 504 of the Rehabilitation Act of 1973 (Section 504).

54. During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 504, and as such Defendants are subject to the rules, regulations and penalties of that law.

55. Plaintiff, at all times relevant hereto, was a qualified individual with a disability (cancer) and Defendants were fully aware of Plaintiff's disability. Further, although Plaintiff's disability and the medical treatment therefore substantially limited certain of Plaintiff's major life activities (e.g., walking without intense pain), Plaintiff remained able to perform essential functions as Defendants' staff attorney.

56. By way of the actions described herein, including but not limited to Gorham's express revelation that Defendants were concerned that Plaintiff's cancer treatments had caused an increase in Defendants' insurance costs, Defendants' intentionally discriminated against Plaintiff on the basis of Plaintiff's disability by terminating her employment.

57. Further, the conditions imposed on Plaintiff by Defendants were sufficiently severe and pervasive so as to result in an abusive working environment that altered the conditions of Plaintiff's employment and compromised her physical and emotional health.

14

58. Defendants' unlawful discriminatory conduct as to Plaintiff was made with malice and reckless indifference to her federally protected rights, and were sufficiently severe and pervasive so as to compromise Plaintiff's physical and emotional health

59. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

    a. Lost income;

    b. Lost benefits;

    c. Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

    d. Severe emotional anguish and distress, humiliation and embarrassment; and,

    e. Economic loss.

60. The foregoing conduct violates Section 504 of the Rehabilitation Act of 1973, as amended.

61. Plaintiff requests relief as provided in the Prayer for Relief.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, as amended (T.C.A. §§ 4-21-101 *et seq.*)

62. Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

63. Plaintiff brings this count against Defendants pursuant to T.C.A. §§ 4-21-101 *et seq.* (Section 4-21-101).

64. During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 4-21-101, and as such Defendants are subject to the rules, regulations and penalties of that law.

15

65. By way of the actions and omissions described herein, Defendants violated Section 4-21-101 by intentionally establishing, maintaining and perpetuating a racially hostile workplace environment through which discriminatory intimidation, ridicule and insults permeated. Further, these conditions were sufficiently severe and pervasive so as to result in an abusive working environment that altered the conditions of Plaintiff's employment and compromised her physical and emotional health.

66. Defendants' unlawful discriminatory conduct as to Plaintiff was made with malice and reckless indifference to her state protected rights.

67. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

     a. Lost income;

     b. Lost benefits;

     c. Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

     d. Severe emotional anguish and distress, humiliation and embarrassment; and,

     e. Economic loss.

68. The foregoing conduct violates T.C.A. §§ 4-21-101 *et seq.*, as amended.

69. Plaintiff requests relief as provided in the Prayer for Relief.

### FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, as amended
### (T.C.A. § 4-21-301(1))

70. Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

16

71. Plaintiff brings this count against Defendants pursuant to T.C.A. § 4-21-301 (1) (Section 4-21-301(1)).

72. During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 4-21-301(1), and as such Defendants are subject to the rules, regulations and penalties of that law.

73. By way of the actions and omissions described herein, Defendants violated Section 4-21-301(1) by retaliating and discriminating against Plaintiff after she opposed and complained about Defendants' discriminatory practices against her as well as what clearly was Gorham's overextension of services, namely, what appeared to be the unauthorized practice of law.

74. Defendants' unlawful discriminatory conduct as to Plaintiff was made with malice and reckless indifference to her state protected rights.

75. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

      a. Lost income;

      b. Lost benefits;

      c. Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

      d. Severe emotional anguish and distress, humiliation and embarrassment; and,

      e. Economic loss.

76. The foregoing conduct violates T.C.A. §§ 4-21-301(1), as amended.

77. Plaintiff requests relief as provided in the Prayer for Relief.

## SIXTH CLAIM FOR RELIEF

## VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, as amended
## (T.C.A. § 4-21-301(2))

78. Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

79. Plaintiff brings this count against Defendants pursuant to T.C.A. § 4-21-301

(2) (Section 4-21-301(2)).

80. During all times complained of herein, Defendants were employers and

Plaintiff was an employee under the terms of Section 4-21-301(2), and as such

Defendants are subject to the rules, regulations and penalties of that law.

81. By way of the actions described herein (particularly, McCartney's admission

that she had engaged Gorham to conduct an investigation of Plaintiff nearly 3 years after

Plaintiff's hire), Defendants violated Section 4-21-301(2) by aiding, abetting, inciting,

compelling and otherwise enabling its staff to engage in discriminatory and retaliating

acts and practices against Plaintiff.

82. Defendants' unlawful discriminatory conduct as to Plaintiff was made with

malice and reckless indifference to her state protected rights.

83. As a direct and proximate result of the actions and conduct of the Defendants,

Plaintiff has suffered substantial actual damages, including but not limited to:

  a. Lost income;

  b. Lost benefits;

  c. Other compensation and benefits to which she would have been entitled

and would have received but for Defendants' intentional illegal conduct;

d. Severe emotional anguish and distress, humiliation and embarrassment; and,

e. Economic loss.

84. The foregoing conduct violates T.C.A. §§ 4-21-301(2), as amended.

85. Plaintiff requests relief as provided in the Prayer for Relief.

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, as amended (T.C.A. § 4-21-401)

86. Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

87. Plaintiff brings this count against Defendants pursuant to T.C.A. § 4-21-401 (Section 4-21-401).

88. During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 4-21-401, and as such Defendants are subject to the rules, regulations and penalties of that law.

89. By way of the actions described herein, Defendants violated Section 4-21-401 by discriminating against and otherwise limiting Plaintiff with respect to the terms, conditions and privileges of her employment with Plaintiff because of her race.

90. Defendants' unlawful discriminatory conduct as to Plaintiff was made with malice and reckless indifference to her state protected rights.

91. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

a. Lost income;

b. Lost benefits;

19

c.  Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

d.  Severe emotional anguish and distress, humiliation and embarrassment; and,

e.  Economic loss.

92.  The foregoing conduct violates T.C.A. §§ 4-21-401, as amended.

93.  Plaintiff requests relief as provided in the Prayer for Relief.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, as amended (T.C.A. § 4-21-701)

94.  Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

95.  Plaintiff brings this count against Defendants pursuant to T.C.A. § 4-21-701 (Section 4-21-701).

96.  During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 4-21-701, and as such Defendants are subject to the rules, regulations and penalties of that law.

97.  By way of the actions described herein, Defendants violated Section 4-21-701 by engaging in the malicious harassment of Plaintiff.

98.  Defendants' unlawful discriminatory conduct as to Plaintiff was made with malice and reckless indifference to her state protected rights.

99.  As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

a.  Lost income;

b.  Lost benefits;

20

c. Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

d. Severe emotional anguish and distress, humiliation and embarrassment; and,

e. Economic loss.

100. The foregoing conduct violates T.C.A. §§ 4-21-701, as amended.

101. Plaintiff requests relief as provided in the Prayer for Relief.

## EIGTH CLAIM FOR RELIEF

### VIOLATION OF THE TENNESSEE PUBLIC PROTECTON "WHISTLEBLOWER" ACT AND THE COMMON LAW, as amended (T.C.A. § 50-1-304)

102. Plaintiff incorporate Paragraphs 1 through 30 as alleged above.

103. Plaintiff brings this count against Defendants pursuant to T.C.A. § 50-1-304 (Section 50-1-304).

104. During all times complained of herein, Defendants were employers and Plaintiff was an employee under the terms of Section 50-1-304, and as such Defendants are subject to the rules, regulations and penalties of that law.

105. The conduct of Defendants as described herein amounts to a retaliatory discharge as defined by Section 50-1-304 and the common law.

106. Defendants' unlawful discriminatory conduct as to Plaintiff was made with malice and reckless indifference to her state protected rights.

107. As a direct and proximate result of the actions and conduct of the Defendants, Plaintiff has suffered substantial actual damages, including but not limited to:

21

a. Lost income;

b. Lost benefits;

c. Other compensation and benefits to which she would have been entitled and would have received but for Defendants' intentional illegal conduct;

d. Severe emotional anguish and distress, humiliation and embarrassment; and,

e. Economic loss.

108. The foregoing conduct violates T.C.A. §§ 50-1-304, as amended.

109. Plaintiff requests relief as provided in the Prayer for Relief.

**WHEREFORE**, **PREMISES CONSIDERED**, Plaintiff Josette M. Chambers prays for the following relief:

1. That Defendants be ordered to make Plaintiff whole by providing damages and equitable relief for all harm sustained as a result of the Defendants' conduct including back pay, front pay and bonuses;

2. That Defendants be ordered to make Plaintiff whole by providing compensatory damages for non-pecuniary losses including severe emotional distress, pain and suffering, and mental anguish, in amounts to be proved at trial;

3. That Plaintiff be awarded general and special damages suffered by Plaintiff as a result of Defendants' discriminatory and retaliatory practices;

4. That Plaintiff be awarded punitive damages in an amount to be determined at trial;

5. That Plaintiff be awarded litigation expenses and costs;

22

6.  That Plaintiff be awarded prejudgment and post-judgment interest as provided by law;

7.  That an Order issue expunging disciplinary records for Plaintiff which relate to Defendants' discipline decisions resulting from their discriminatory and retaliatory practices; and,

8.  That Plaintiff be granted such other and further legal equitable relief as this Court deems necessary, just and proper.

9.  Plaintiff demands a trial by jury.

Respectfully submitted,

JOSETTE M. CHAMBERS (BPR #28788)
6700 Cabot Drive, Suite D-2
Nashville, TN  37209
(615) 915-8707

*Appearing Pro Se*

23

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **494-2012-00553** |

| **Tennessee Human Rights Commission** | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Josette M. Chambers** | **(615) 915-8707** | **10-23-1954** |

| Street Address | City, State and ZIP Code |
|---|---|
| **6700 Cabot Drive D-2, Nashville, TN 37209** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **TENNESSEE FAIR HOUSING COUNCIL** | **15 - 100** | **(615) 874-1636** |

| Street Address | City, State and ZIP Code |
|---|---|
| **107 Music City Circle #318, Nashville, TN 37214** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify)  **Hostile Work Environment**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-01-2011**  Latest **12-31-2011**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired with the above named employer on or around March 2009. I was terminated from my position as Staff Attorney on 12/31/2011. The company alleges that I engaged in gross misconduct.

Since on or around August 1, 2011, I have been subjected to a hostile work environment and harassment from my immediate supervisor. I complained to my supervisor regarding her discriminatory actions and the harassment continued. For example, I was not allowed to do Loan Modifications, but Tonya (white, younger, Puerto Rican, female with a GED) was allowed to do the work. I was given Tonya's work to do instead. Carol (white, female, attorney from another agency) was also treated more favorably in that my supervisor allowed Carol and Tonya to represent the agency publicly instead of me when it was my job to do. I was diagnosed with a condition and after I told my supervisor, the harassment and belittlement increased.

I believe that I have been discriminated against because of my race (black) and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe that I have been discriminated against because of my age (40+) in violation of the Age Discrimination in Employment Act of 1967, as amended.

I believe that I have been discriminated against in violation of the Americans with Disabilities Amendments Act of 2008.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 05, 2012** | JAN 05 2012 |

"PLTF EXHIBIT A "



**STATE OF TENNESSEE**
**TENNESSEE HUMAN RIGHTS COMMISSION**
**CENTRAL OFFICE**
ANDREW JOHNSON TOWER
710 JAMES ROBERTSON PARKWAY, SUITE 100
NASHVILLE, TENNESSEE 37243-1219
(615) 741-5825 Fax (615) 253-1886
www.tn.gov/humanrights



RECEIVED
JAN 0 9 2012

## AMENDED

### DISCRIMINATION COMPLAINT
(DEPARTMENT USE ONLY)

| THRC#_____ | HUD#_____ | EEOC#_____ |
|---|---|---|

**1. TYPE OF COMPLAINT.** Check which type of complaint you are filing:
☐ HOUSING    ☒ EMPLOYMENT    ☐ PUBLIC ACCOMMODATION    ☒ TITLE VI

**2. COMPLAINANT CONTACT INFORMATION.** Provide your name and address.

NAME _Josette M. Chambers_     ADDRESS _6700 Cabot Dr._

TELEPHONE ( )     CELL ( _615_) _915-8707_     APT NO. _D-2_     CITY _Nashville_

E-MAIL: _jchambers1214@yahoo.com_   DATE OF BIRTH _10/23/54_     COUNTY _Davidson_     STATE _TN_     ZIP _37209_

Provide the contact information of someone who can assist us in contacting you should we have difficulty in reaching you.

NAME _Iman Chambers_     ADDRESS _____

TELEPHONE ( )     CELL ( _615_) _474-9916_     CITY _Nashville_     STATE _TN_     ZIP _37209_

**3. RESPONDENT CONTACT INFORMATION.**
Provide the name and address of party(ies) that you believe discriminated against you:

NAME _TN Fair Housing Council_     ADDRESS _107 Music City Circle_

TYPE OF BUSINESS _Federally Funded Private Agency_     CITY _Nashville_     STATE _TN_     ZIP _37_

(FOR EMPLOYMENT ONLY) NAME OF IMMEDIATE SUPERVISOR     TELEPHONE ( )     COUNTY

_Tracey McCartney_     _615/874-2344_     _Davidson_

_Registered Agent: Fred Cloud, 2105 20th Ave. South, Nashville TN 37212_

**4. WHEN DID THE DISCRIMINATORY ACT(S) OCCUR?**

Beginning date of the alleged discriminatory act?     _July 2010_

Most recent date of the alleged discriminatory act?     _December 31, 2011_

Is the alleged discriminatory act ongoing? ☒ YES   ☐ NO

2

**FOR HOUSING COMPLAINTS ONLY** *(COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING A HOUSING COMPLAINT)*

### 5. RESPONDENT INFORMATION

IS THE RESPONDENT ONE OF THE FOLLOWING? (MARK ALL THAT APPLY.)
☐ OWNER  ☐ BUILDER  ☐ BROKER  ☐ SALESPERSON  ☐ MANAGER  ☐ BANK OR OTHER LENDER  ☐ OTHER, SPECIFY: _____

WHAT KIND OF PROPERTY WAS INVOLVED?
☐ SINGLE FAMILY HOUSE  ☐ HOUSE OR BUILDING FOR 2 OR MORE FAMILIES  ☐ BUILDING FOR 5 OR MORE FAMILIES  ☐ OTHER: _____

| WHAT IS THE ADDRESS OF THE HOUSE OR PROPERTY? (STREET, CITY, COUNTY, STATE) | WAS THE HOUSE OR PROPERTY:<br>☐ FOR SALE  ☐ FOR RENT | DID THE OWNER LIVE AT THE PROPERTY?<br>☐ YES  ☐ NO |
| --- | --- | --- |

### 6. BASIS OF DISCRIMINATION: Why do you believe you were discriminated against? *Please mark below only the categories which apply, and be sure to specify the categories which you marked.*

☐ RACE: _____  ☐ SEX/GENDER: ☐ MALE ☐ FEMALE

☐ COLOR: _____  ☐ RELIGION: _____

☐ NATIONAL ORIGIN: _____  ☐ CREED: _____

☐ DISABILITY: _____  ☐ RETALIATED AGAINST

☐ FAMILIAL STATUS (CHILDREN UNDER 18 OR PREGNANT)

### 7. BACKGROUND ON THE ALLEGED DISCRIMINATION: What happened? *Check <u>only</u> those that apply.*

☐ REFUSAL TO SELL, RENT OR DEAL WITH YOU  ☐ DISCRIMINATED IN FINANCING

☐ FALSELY DENIED THAT HOUSING WAS AVAILABLE  ☐ ADVERTISED IN A DISCRIMINATORY MANNER

☐ INTIMIDATED, INTERFERED OR COERCED  ☐ DISCRIMINATED IN REAL ESTATE SERVICES

☐ DIFFERENT TERMS OR CONDITIONS OF THE SALE/ RENTAL  ☐ REFUSAL TO MAKE MODIFICATION / ACCOMMODATION

☐ OTHER_____

---

**FOR *TITLE VI COMPLAINTS ONLY*** *(COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING A TITLE VI COMPLAINT)*
*For discrimination in programs and activities receiving federal financial assistance. **Please specify the categories which you marked.***

### 8. BASIS OF DISCRIMINATION:

☒ RACE: _____  ☐ COLOR : _____

☐ NATIONAL ORIGIN: _____

### 9. BACKGROUND ON THE ALLEGED DISCRIMINATION

Which of following action(s) were taken against you? (***Check <u>only</u> those that apply and describe below.***)

☐ DENIED PROGRAM SERVICE, AID, OR BENEFIT

☐ RECEIVED SERVICE OR BENEFIT DIFFERENTLY OR INFERIOR TO THOSE PROVIDED TO OTHERS

☐ SUBJECTED TO SEGREGATE OR SEPARATE TREATMENT RELATED TO THE RECEIPT OF ANY SERVICE OR BENEFIT

☐ DENIED OPPORTUNITY TO PARTICIPATE AS MEMBER OF PLANNING OR ADVISORY BODY

☐ RETALIATED AGAINST AS A RESULT OF ALLEGING ANY OF THE ABOVE

☒ OTHER ~~PRIMARY OBJECTIVE OF HUD FUNDING WAS TO EMPLOY HOUSING DISCRIM. STAFF TO ADVOCATE~~ STAFF
AGAINST DISCRIM ; I WAS EMPLOYED BY RESPONDENT AS ITS STAFF ATTORNEY.

**FOR EMPLOYMENT COMPLAINTS *ONLY* (COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING AN EMPLOYMENT COMPLAINT)**

**10. EMPLOYMENT HISTORY**

EMPLOYMENT BEGAN ON: MARCH 2009

EMPLOYMENT ENDED ON: December 31, 2011

PAY RATE/SALARY: ~$42,000.

JOB TITLE AT THE TIME OF HIRE: STAFF ATTORNEY

CURRENT JOB TITLE OR TITLE AT THE TIME OF TERMINATION: STAFF ATTORNEY

NAME OF HR/PERSONNEL DIRECTOR: TRACEY MCCARTNEY

NUMBER (#) OF EMPLOYEES: +15, INCLUDING PARTICIPATORY BOARD OF DIRECTORS

DID YOU FILE WITH THE EEOC? ☒ YES ☐ NO

**11. BASIS OF DISCRIMINATION:** Why do you believe you were discriminated against? *Please mark below only the categories which apply, and be sure to specify the categories which you marked.*

☒ RACE: _____
☐ COLOR: _____
☐ NATIONAL ORIGIN: _____
☒ DISABILITY: PHYSICAL _____
☒ AGE (40 AND OVER): _____

☐ SEX/GENDER: ☐ MALE ☐ FEMALE
☐ RELIGION: _____
☐ CREED: _____
☒ RETALIATED AGAINST

**12. BACKGROUND ON THE ALLEGED DISCRIMINATION**
Which of following employment action(s) were taken against you? (*Check only those that apply.*)

☒ DISCHARGED
☐ LAID OFF
☒ SUSPENDED
☒ HARASSED/INTIMIDATED
☒ RETALIATED AGAINST

☐ TRANSFERRED
☐ DEMOTED
☐ FAILURE TO HIRE
☐ FAILURE TO PROMOTE
☐ FAILURE TO RECALL

☐ DENIED BENEFITS (LEAVE, INSURANCE, ETC.)
☐ DENIED PAY RAISE
☐ DENIED RELIGIOUS ACCOMMODATION
☒ DENIED DISABILITY ACCOMMODATION
☐ OTHER_____

---

**FOR PUBLIC ACCOMMODATION *ONLY* (COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING A PUBLIC ACCOMMODATION COMPLAINT)**

**13. BASIS OF DISCRIMINATION:** Why do you believe you were discriminated against? *Please mark below only the categories which apply, and be sure to specify the categories which you marked.*

☐ RACE: _____
☐ COLOR: _____
☐ NATIONAL ORIGIN: _____
☐ AGE (40 AND OVER): _____

☐ SEX/GENDER: ☐ MALE ☐ FEMALE
☐ RELIGION: _____
☐ CREED: _____
☐ RETALIATED AGAINST

**14. IN YOUR OWN WORDS, TELL US WHAT HAPPENED.** Give dates, when applicable. Also, describe how others were treated differently than you. Use additional paper if needed.

① I am a 57-year old African-American female w/over 25 yrs experience as a lawyer (litigator). Until 12/31/2011, I served as Respondent's staff attorney.

② Respondent is a HUD-funded private agency. In addition to Tracey McCartney (Exec. Dir.), Tanya Gorham (Housing Specialist), and me, more than 12 individuals (I believe) serve on its Board of Directors. The directors participate in Respondent's executive decision-making. In fact, the directors approved McCartney's decision to fire me and at least 2 of those directors personally monitored my physical departure from Respondent. Also, as a general rule, federally-funded organizations cannot shield themselves from liability for discrimination on grounds of not having the requisite number of employees to justify discrimination claims. See e.g., the Nat'l Community Services Act of 1990, as modified.

③ I contend that McCartney, a white female with much less experience as an attorney than I, deliberately subjected me to a racially hostile work environment, harassed/intimidated/humiliated me, and otherwise abused her authority as Respondent's exec. director solely because of my race, age and, ultimately, my disability. In a word, from the beginning of my employ, McCartney was obsessed with "putting me in my place" and "getting rid of me" because my illness (cancer)ₐ which according to Gorham, had caused Respondent's insurance rates to rise. McCartney's disparate/abusive treatment of me increased after I complained about the discrimination ~ as well as Gorham's sanctioned/unauthorized practice of law ~ in writing.

④ Importantly, Gorham is a non-African-American, 34 year old female whose educational background consists of a G.E.D.; she is not an attorney or paralegal or legal assistant. Her duties as Housing Specialist included client intake and inputting their info into Respondent's data base. McCartney had Gorham "train" me to do Gorham's work, and had me perform that work and reprimanded when Gorham — who was allowed to give me assignments — apparently complained that I was not doing her work. This change in the terms/conditions of my employment was unnecessary given the low volume of cases; rather it constituted harassment and a discriminatory practice.

⑤ McCartney's official grounds for firing me as of 8/31/2011 was that I engaged in outside work etc. and such constituted "gross misconduct." McCartney was unaware that Gorham

HR-0022 (Rev 3/10)                                                                                              RDA 1654

**14. IN YOUR OWN WORDS, TELL US WHAT HAPPENED.** Give dates, when applicable. Also, describe how others were treated differently than you. Use additional paper if needed.

had advised me that McCartney not only allowed Gorham to handle outside mortgage loan modification cases for one of the Board members for extra pay, but had made the arrangement. Thus, McCartney's action was discriminatory.

⑥ McCartney's action was retaliatory as well; given my complaints (throughout my employment) that Gorham, w/McCartney's permission/participation was engaged in the unauthorized practice of law in that (a) other than handling client cases w/me, McCartney ~~and~~ allowed Gorham to strategized, advised clients and correspond directly with opposing counsel and other representatives re the cases, ~~as well as~~ and, (b) McCartney was discriminating against me.

⑦ McCartney forced me to sign a Separation Agreements during my employment; any refusal to sign would have been grounds for immediate termination; especially given my being in the midst of chemotherapy treatment, losing the job and health care benefits was not an option to me. Importantly, McCartney was vocal re her concern that Respondent might not be funded beyond 12/31/2011 and so I did quibble; however, the agency was funded after my physical departure (McCartney directed that I work from home until 12/31/2011); thus, I actually was fired. These threats of termination constituted cruel/undue harassment and humiliation, especially given my known medical condition.

⑧ McCartney subverted Respondent's grievance procedure by reminding me that TN was an at-will employment state (I feared immediate termination) and stated that I would be fired immediately if I refused to participate in mediation. I signed the non-binding mediation agreement for that same reason (she made clear that she was only there to determine whether to fire me effect 8/15/2011 or 12/31/2011).

⑨ McCartney's acts are discriminatory and harassing / humiliating for all of the reasons (and others discussed in the attached Exhibits). Given my medical condition which is known to her, the emotional distress I've suffered as a result of her discriminatory/retaliatory conduct is indescribable. Further, her characterization of the grounds for my termination as "gross misconduct" is misleading and is yet another example of her obsession w/marring my exemplary employment record in order to "put me in my place." She did not treat non-African American ~~us~~ employees in the manner she treated me, in violation of Titles VI and Titles VII, as violated above.*

*Please see Attachment 1 re McCartney's handling of my unemployment application.



**STATE OF TENNESSEE**
**TENNESSEE HUMAN RIGHTS COMMISSION**
**CENTRAL OFFICE**
ANDREW JOHNSON TOWER
710 JAMES ROBERTSON PARKWAY, SUITE 100
NASHVILLE, TENNESSEE 37243-1219
(615) 741-5825 Fax (615) 253-1886
www.tn.gov/humanrights



2ND AMENDED

**DISCRIMINATION COMPLAINT**
(DEPARTMENT USE ONLY)

THRC# _____ HUD# _____ EEOC# _____

**1. TYPE OF COMPLAINT.** Check which type of complaint you are filing:

☐ HOUSING   ☒ EMPLOYMENT   ☐ PUBLIC ACCOMMODATION   ☒ TITLE VI

**2. COMPLAINANT CONTACT INFORMATION.** Provide your name and address.

NAME _Josette M. Chambers_   ADDRESS _6700 Cabot Dr._
TELEPHONE ( )   CELL ( 615 ) 915-8707   APT NO. _D-2_   CITY _Nashville_
E-MAIL: _jchamberslaw@yahoo.com_   DATE OF BIRTH _10/23/1954_   COUNTY _Davidson_   STATE _TN_   ZIP _37209_

Provide the contact information of someone who can assist us in contacting you should we have difficulty in reaching you.

NAME _Iman Chambers_   ADDRESS _____
TELEPHONE ( )   CELL ( 615 ) 474-9916   CITY _____ STATE _____ ZIP _____

**3. RESPONDENT CONTACT INFORMATION.**
Provide the name and address of party(ies) that you believe discriminated against you:

NAME ① Tracey McCartney, Exec. Director / ② TN Fair Housing Council ③ its Bd. of Directors   ADDRESS _107 Music City Circle, Ste. 318_
TYPE OF BUSINESS ④ HUD   _Private, HUD-funded Agency_   CITY _Nashville_   STATE _TN_   ZIP _37214_
(FOR EMPLOYMENT ONLY) NAME OF IMMEDIATE SUPERVISOR   TELEPHONE ( 615 )   COUNTY
_Tracey McCartney_   _874-2344_   _Davidson_

**4. WHEN DID THE DISCRIMINATORY ACT(S) OCCUR?**

Beginning date of the alleged discriminatory act?   _July 2009 (and continuing)_

Most recent date of the alleged discriminatory act?   _Dec. 31, 2011_

Is the alleged discriminatory act ongoing? ☒ YES   ☐ NO

HR-0022 (Rev 3/10)   2   RDA 1654

*FOR HOUSING COMPLAINTS ONLY (COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING A HOUSING COMPLAINT)*

### 5. RESPONDENT INFORMATION

IS THE RESPONDENT ONE OF THE FOLLOWING? (MARK ALL THAT APPLY.)
☐ OWNER  ☐ BUILDER  ☐ BROKER  ☐ SALESPERSON ☐ MANAGER  ☐ BANK OR OTHER LENDER  ☐ OTHER, SPECIFY: _____

WHAT KIND OF PROPERTY WAS INVOLVED?
☐ SINGLE FAMILY HOUSE  ☐ HOUSE OR BUILDING FOR 2 OR MORE FAMILIES  ☐ BUILDING FOR 5 OR MORE FAMILIES  ☐ OTHER: _____

| WHAT IS THE ADDRESS OF THE HOUSE OR PROPERTY? (STREET, CITY, COUNTY, STATE) | WAS THE HOUSE OR PROPERTY: ☐ FOR SALE ☐ FOR RENT | DID THE OWNER LIVE AT THE PROPERTY? ☐ YES ☐ NO |
|---|---|---|

### 6. BASIS OF DISCRIMINATION: Why do you believe you were discriminated against? *Please mark below only the categories which apply, and be sure to specify the categories which you marked.*

☐ RACE: _____
☐ COLOR: _____
☐ NATIONAL ORIGIN: _____
☐ DISABILITY: _____
☐ FAMILIAL STATUS (CHILDREN UNDER 18 OR PREGNANT)

☐ SEX/GENDER: ☐ MALE ☐ FEMALE
☐ RELIGION: _____
☐ CREED: _____
☐ RETALIATED AGAINST

### 7. BACKGROUND ON THE ALLEGED DISCRIMINATION: What happened? Check <u>only</u> those that apply.

☐ REFUSAL TO SELL, RENT OR DEAL WITH YOU
☐ FALSELY DENIED THAT HOUSING WAS AVAILABLE
☐ INTIMIDATED, INTERFERED OR COERCED
☐ DIFFERENT TERMS OR CONDITIONS OF THE SALE/ RENTAL
☐ OTHER _____

☐ DISCRIMINATED IN FINANCING
☐ ADVERTISED IN A DISCRIMINATORY MANNER
☐ DISCRIMINATED IN REAL ESTATE SERVICES
☐ REFUSAL TO MAKE MODIFICATION / ACCOMMODATION

---

*FOR \*TITLE VI COMPLAINTS ONLY (COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING A TITLE VI COMPLAINT)*
*\*For discrimination in programs and activities receiving federal financial assistance. Please specify the categories which you marked.*

### 8. BASIS OF DISCRIMINATION:

☒ RACE: _____          ☐ COLOR : _____
☐ NATIONAL ORIGIN: _____

### 9. BACKGROUND ON THE ALLEGED DISCRIMINATION

Which of following action(s) were taken against you? (*Check <u>only</u> those that apply and describe below.*)
☐ DENIED PROGRAM SERVICE, AID, OR BENEFIT
☐ RECEIVED SERVICE OR BENEFIT DIFFERENTLY OR INFERIOR TO THOSE PROVIDED TO OTHERS
☐ SUBJECTED TO SEGREGATE OR SEPARATE TREATMENT RELATED TO THE RECEIPT OF ANY SERVICE OR BENEFIT
☐ DENIED OPPORTUNITY TO PARTICIPATE AS MEMBER OF PLANNING OR ADVISORY BODY
☒ RETALIATED AGAINST AS A RESULT OF ALLEGING ANY OF THE ABOVE
☒ OTHER  RESPONDENTS' PRIMARY OBJECTIVE WAS TO EMPLOY STAFF TO ADVOCATE
AGAINST HOUSING DISCRIM; I WAS EMPLOYED BY RESPONDENTS AS AGENCY'S STAFF ATTORNEY

3

**FOR EMPLOYMENT COMPLAINTS ONLY** *(COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING AN EMPLOYMENT COMPLAINT)*

## 10. EMPLOYMENT HISTORY

EMPLOYMENT BEGAN ON:
___MARCH 2009___

EMPLOYMENT ENDED ON:
___DECEMBER 31, 2011___

PAY RATE/SALARY:
___$48,000⁺/YR.___

JOB TITLE AT THE TIME OF HIRE:
___STAFF ATTORNEY___

CURRENT JOB TITLE OR TITLE AT THE TIME OF TERMINATION:
___

NAME OF HR/PERSONNEL DIRECTOR:
___TRACEY McCARTNEY___

NUMBER (#) OF EMPLOYEES
INCLUDING PARTICIPATORY BOARD OF DIRECTORS + 15

DID YOU FILE WITH THE EEOC?
☒ YES   ☐ NO

### 11. BASIS OF DISCRIMINATION: Why do you believe you were discriminated against? *Please mark below only the categories which apply, and be sure to specify the categories which you marked.*

☒ RACE: _____

☐ COLOR: _____

☐ NATIONAL ORIGIN: _____

☒ DISABILITY: PHYSICAL _____

☒ AGE (40 AND OVER): _____

☐ SEX/GENDER: ☐ MALE ☐ FEMALE

☐ RELIGION: _____

☐ CREED: _____

☒ RETALIATED AGAINST

### 12. BACKGROUND ON THE ALLEGED DISCRIMINATION
Which of following employment action(s) were taken against you? *(Check only those that apply.)*

☒ DISCHARGED

☐ LAID OFF

☒ SUSPENDED

☒ HARASSED/INTIMIDATED

☒ RETALIATED AGAINST

☐ TRANSFERRED

☐ DEMOTED

☐ FAILURE TO HIRE

☐ FAILURE TO PROMOTE

☐ FAILURE TO RECALL

☐ DENIED BENEFITS (LEAVE, INSURANCE, ETC.)

☐ DENIED PAY RAISE

☐ DENIED RELIGIOUS ACCOMMODATION

☐ DENIED DISABILITY ACCOMMODATION

☐ OTHER_____

---

**FOR PUBLIC ACCOMMODATION ONLY** *(COMPLETE THIS BOX ONLY IF YOU ARE SUBMITTING A PUBLIC ACCOMMODATION COMPLAINT)*

### 13. BASIS OF DISCRIMINATION: Why do you believe you were discriminated against? *Please mark below only the categories which apply, and be sure to specify the categories which you marked.*

☐ RACE: _____

☐ COLOR: _____

☐ NATIONAL ORIGIN: _____

☐ AGE (40 AND OVER): _____

☐ SEX/GENDER: ☐ MALE ☐ FEMALE

☐ RELIGION: _____

☐ CREED: _____

☐ RETALIATED AGAINST

HR-0022 (Rev 3/10)

RDA 1654

**14. IN YOUR OWN WORDS, TELL US WHAT HAPPENED.** Give dates, when applicable. Also, describe how others were treated differently than you. Use additional paper if needed.

① MY ORIGINAL CHARGE OF DISCRIMINATION (EEOC CHARGE NO. 494-2012-00553) FILED 1/5/2012, AND MY FIRST AMENDED CHARGED FILED ON 1/9/2012 ARE HEREBY INCORPORATED BY REFERENCE (ALONG W/ ALL ATTACHMENTS AND EXHIBITS)

② I AM ADDING, AS RESPONDENTS, TFHC'S BOARD OF DIRECTORS, BECAUSE THEY ACQUISED TO AND ACTIVELY PARTICIPATED IN MY WRONGFUL TERMINATION. I ALSO ADD HUD BECAUSE CERTAIN OF ITS OFFICIALS WERE NOTIFIED OF (AND EVEN WITNESSED AT LEAST ONE INCIDENCE OF) HARASSMENT BY TRACEY McCARTNEY) AND FAILED TO ADDRESS IT.

③ ON 1/14/2012, I DISCOVERED THAT NOT ONLY TANYA GORHAM BUT TRACEY McCARTNEY HERSELF WAS ENGAGED IN WHAT SHE DEFINED AS 'GROSS MISCONDUCT.' THAT IS, McCARTNEY A SOLICITED AND ENGAGED IN OUTSIDE WORK AS A CONSULTANT FOR FAIR HOUSING TRAINING AND WEB CONTENT DESIGN AND WAS PERSONALLY COMPENSATED FOR THAT WORK. MOREOVER, TANYA GORHAM IS CURRENTLY LISTED AS AN ACTIVE TENNESSEE REAL ESTATE AGENT ON VARIOUS WEBSITES, THAT BEING CLEAR INDICATION THAT SHE HAS RESUMED THAT WORK. AT ALL TIMES RELEVANT, McCARTNEY AND GORHAM WERE AND ARE NOW EMPLOYED BY TFHC. I WAS FIRED FOR ALLEDLY DOING THE SAME THING. (SEE EXHIBIT A)

④ THE ABOVE-DESCRIBED DISCRIMINATOR/RETALIATORY CONDUCT, THE LOSS OF HAS CAUSED MEDICAL BENEFITS WHICH HAS CAUSED A DISRUPTION OF MY CHEMOTHERAPY, AND THE LOSS OF INCOME HAVE CAUSED ME EXTREME EMOTIONAL & PHYSICAL DISTRESS

## IMPORTANT NOTICE

***To file in state court: For Employment, Housing and Public Accommodation Complaints:***
You, as the Complainant, have the right to hire an attorney and file a civil lawsuit in the state court system, either Chancery or Circuit, at any time during the investigation of this complaint. If you choose this option, you must file suit within one (1) year after the alleged discriminatory practice ceases, and prior to any determination being made by the Tennessee Human Rights Commission (THRC). Unlike federal law, state law does not toll the statute of limitations on your claim while your charge is being investigated and/or mediated by this agency. You are not required to file a complaint with the THRC, nor do you need the THRC's permission before you can file suit in Chancery or Circuit court. If you file a civil lawsuit in Chancery or Circuit court, then pursuant to state law, THRC must administratively close its investigation of your complaint.

If THRC issues a *final* determination in your case, and you subsequently file a civil lawsuit in state court asserting the same allegations as your THRC complaint, then your case may be dismissed. However, within 30 days of receipt of THRC's *final* determination, you may file a private action in either Chancery or Circuit court appealing the determination.

***For Housing Complaints only:***
If a federal law is involved, this agency will send the Department of Housing and Urban Development (HUD) a copy of our Notice of Determination. HUD will then mail the parties a Notice of Closure of this case. Notwithstanding the determination by HUD, the Fair Housing Act provides that the complainant may file a civil action in an appropriate court within two (2) years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending.

***For Employment Complaints only:***
If a federal law is involved, this agency will send the Equal Employment Opportunity Commission (EEOC) a copy of our Notice of Determination. The EEOC will then mail the parties a Notice of Closure of this case and/or a Right to Sue in federal court. A lawsuit must be filed in an appropriate court within ninety (90) days of receipt of the EEOC Notice of Closure/Right to Sue.

***For Title VI Complaints only:***
An individual has the right to file an administrative complaint against any state department or agency (recipient), or subrecipient receiving Federal financial assistance.

**By signing this complaint form, you are acknowledging that you have read and understand your rights as set forth above.**

**Declaration:** *I declare under penalty of perjury that the foregoing information in my complaint is true and correct.*

_____
Complainant Signature

____1/18/2012____
Date

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Josette M. Chambers**
    **6700 Cabot Drive D-2**
    **Nashville, TN 37209**

From: **Nashville Area Office**
       **220 Athens Way**
       **Suite 350**
       **Nashville, TN 37228**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **494-2012-00553** | **Deborah K. Walker,**<br>**Supervisory Investigator** | **(615) 736-2109** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[X] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Sarah L. Smith*

**Sarah L. Smith,**
**Area Office Director**

JAN **2 4** 2012

*(Date Mailed)*

Enclosures(s)

cc:
    **TENNESSEE FAIR HOUSING COUNCIL**
    **107 Music City Circle #318**
    **Nashville, TN 37214**

EXHIBIT B


MAIL
Classic

**Fw: Tracey McCartney**                                    Sunday, July 10, 2011 1:19 AM
From: "Josette Chambers" <jchamberslaw@yahoo.com>
   To: jchamberslaw@yahoo.com

--- On **Tue, 12/28/10, Josette Chambers <*jchamberslaw@yahoo.com*>** wrote:

> From: Josette Chambers <jchamberslaw@yahoo.com>
> Subject: Tracey McCartney
> To: jchamberslaw@yahoo.com, josette.chamberslaw@yahoo.com
> Date: Tuesday, December 28, 2010, 11:44 AM
>
> Gave her letters to sign for 3 potential clients met at homeless fair on December 8.
>
> I had done intake, given papers to Davalynn to set up files...they ended up on Tanya's desk. Tanya
> had not sent out intake papers.
>
> I, being in constant phone contact with the clients--who were making/breaking appts--retrieved files
> from Tanya's desk and prepped cover letters plus intake papers.
>
> Since TM insists on seeing everything I draft prior to mailing, I submitted the files for her review. She
> called me in. Wanted to know why intake papers just being mailed. I explained as noted above. She
> accused me of passing off my work, dropping the ball. Tanya admitted that she had the files. TM
> insisted that I pass off my work to others, that I am to do intake, set up computer file for clients, that
> she has showed me 3 times how to do intake.
>
> I stated that I am used to someone setting up files, that I thought this was the office protocol as Tanya,
> the INTAKE SPECIALIST, had been setting up computer files, mailing out the initial papers and then
> handing files to me to perform the LEGAL work. There seems to be NO delineation of duties here.
>
> TM maintained her position.
>
> MY NOTES: I was hired as the **attorney**, Tanya was promoted to Intake Specialist. This behavior on
> part of TM is a continuum; she previously got upset when I asked Tanya to prepare a label for me so
> that correspondence could be mailed (Tanya had the labels) and threw the letter on my desk, telling
> me "Tanya is NOT a secretary." There is a constant "putting me in my place." TM has had NO
> experience as an attorney other than her administrative position here; Tanya has a GED.

TENNESSEE FAIR HOUSING COUNCIL
107 MUSIC CITY CIRCLE, SUITE 318
NASHVILLE, TN 37214
(615) 874-2344
FAX: (615) 874-1636

July 25, 2011

Josette Chambers
6700 Cabot Dr., #D-2
Nashville, TN 37209

Dear Josette:

Effective immediately, you are on **paid** suspension from the Tennessee Fair Housing Council
until the end of business Aug. 15, 2011. Your health insurance will remain in force through this
period.

The reason for your suspension is your gross misconduct as follows:

1) Providing legal representation to non-Council clients, in violation of the Memorandum of
   Understanding you signed when you were offered the position of Staff Attorney in
   February 2009. Further, you have engaged in some activities connected with that
   representation while on the clock at the Council and using Council resources, in violation
   of our policy and possibly federal law. Further still, at least some of the legal
   representation in which you have been engaged is unauthorized practice of law and is a
   violation of the California Business and Professions Code and, consequently, the
   Tennessee Rules of Professional Conduct.

2) Breaching the Separation Agreement by disparaging me and the Council to third parties
   not associated with the Council. (You are and have always been free, however, to pursue
   a grievance or take advantage of your legal rights to complain of an alleged hostile
   environment.)

3) Engaging in conduct that is disruptive of the smooth operation and the mission of the
   Tennessee Fair Housing Council.

You are immediately to hand over your keys and key card and return to the Council any files or
other property that may be in your possession. During your suspension, you are banned from the
office absent an explicit invitation from me or a member of the board.

This suspension is intended to provide all parties with a cooling-off period during which we can
evaluate our employment relationship and perhaps reach an understanding regarding your
employment between now and the end of December 2011. **The suspension will not be charged
against your leave and will not affect your ongoing payroll deduction.**

In the meantime, pursuant to your most recent separation agreement, you must cease and desist
your ongoing campaign of disparagement of me and, by extension, the Council to third parties
not associated with the Council. This includes but is not limited to former employees. You must

## SECOND AMENDED SEPARATION AGREEMENT
## FOLLOWING MEDIATION OF AUG. 10, 2011

This separation agreement ("this Agreement") is entered into as of _8/17/11_, by and between Josette Chambers (hereinafter "Ms. Chambers") and the Tennessee Fair Housing Council (hereinafter "TFHC").

1) **Effective date of separation**: The effective date of separation will be Jan. 1, 2012. Ms. Chambers' last day of employment will be Dec. 31, 2011. TFHC reserves the right, in its sole discretion, to change the effective date of separation if it deems that Ms. Chambers has engaged in gross misconduct and, therefore, such change is in the best interest of the organization and/or its clients. If the effective date of separation changes, TFHC shall give Ms. Chambers two weeks' notice of the new date of separation, and this agreement may be modified to reflect the new separation date.

   The misconduct identified prior to the Aug. 10, 2011, mediation date shall not form the basis of termination prior to Dec. 31, 2011; however, new or newly discovered misconduct may form such a basis.

2) **Wages and insurance:** It is understood by all parties that Ms. Chambers will be paid, and will remain on TFHC's group insurance plan, through Dec. 31, 2011, or through any new date of separation if such date is changed in accordance with Paragraph 1).

3) **Unemployment benefits:** It is understood by all parties that Ms. Chambers is entitled to unemployment benefits; as such, TFHC will not interfere with Ms. Chambers' receipt of same.

4) **Work site:** Ms. Chambers will work primarily from home or some other location remote from TFHC's office. However, she may enter the office when necessary to meet with clients or gain access to needed resources, but such visits shall be by appointment and will take place during normal business hours. Ms. Chambers understands that she will not be issued an office key or key card during the period she is working from home. Ms. Chambers further agrees that working from home does not constitute an effort to limit, segregate, or classify her in any way which would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee, because of her race, color, religion, sex, age, disability, or national origin.

5) **Communication:** Communication between Ms. Chambers and TFHC personnel will be primarily in writing. The parties agree that third parties may be present for any oral communication that takes place.

6) **Work assignments:** The parties agree that this employment arrangement may necessitate a change in job duties for Chambers, including but not limited to a

reduction or even elimination of representation of clients in favor of work on writing and research projects.

7) **Outside practice of law:** Ms. Chambers agrees not to represent clients not assigned to her by TFHC while employed at TFHC unless she: a) gets prior written approval from THRC, and b) secures malpractice insurance.

8) **Resources:** TFHC agrees to provide reasonable resources needed by Ms. Chambers to work from home, including the loan of computer and telephone equipment which shall be returned to TFHC prior to the end of Ms. Chambers' employment.

9) **Time records:** Ms. Chambers agrees to provide timely time records and to e-mail to TFHC her time sheets no more than 48 hours after the end of the pay period.

10) **Trial period:** The parties agree that this telecommuting arrangement will take place from Aug. 16, 2011, through Sept. 30, 2011. Whether to continue the telecommuting arrangement through Dec. 31, 2011, or have Ms. Chambers return to the office will be at the sole discretion of TFHC's director.

11) **Cooperation with TFHC:** In consideration of the foregoing, Ms. Chambers understands and agrees that her cooperation may be necessary with respect to ongoing discrimination complaints filed with TFHC, and she agrees to provide testimony, affidavits or other information as needed by TFHC acting on behalf of itself or complainants.

12) **Ms. Chambers' Release:** Ms. Chambers hereby settles, waives, releases and discharges any and all claims, demands, actions or causes of action, known or unknown, which she has or may have against TFHC and its current and former employees, directors, officers, shareholders, insurers, agents, members, of counsel, associates, paralegals, attorneys, or representatives (collectively, the "Released Parties") including, but not limited to, claims arising from or during her employment with TFHC, the terms and conditions of that employment, her separation from that employment, or any other event, transaction or communication between Ms. Chambers and the Released Parties. Ms. Chambers recognizes that by signing this Agreement, she may be giving up some claim, demand or cause of action, which she now may have, whether known or unknown. Ms. Chambers acknowledges that she will have 21 days to consider whether to accept this Agreement and 7 days to revoke her acceptance. Prior to signing the Agreement, Ms. Chambers will continue on paid administrative leave. After signing the Agreement, if Ms. Chambers decides to revoke her acceptance, her employment with TFHC will end immediately upon such revocation. Ms. Chambers acknowledges that she is hereby advised to consult with an attorney about all of the provisions of this Agreement including this release.

Josette Chambers

___8/16/2011___ _____M. Cha_____
Date

_____
Tennessee Fair Housing Council, by TraceyMcCartney

___8/17/11_____
Date

| | |
|---|---|
| **From:** | Josette Chambers [jchamberslaw@yahoo.com] |
| **Sent:** | Wednesday, January 18, 2012 6:17 AM |
| **To:** | usa0511@fedex.com |
| **Subject:** | Please Print Out in B/W, Plain Paper |

**EEOC Complaint:**

**Josette Chambers v. Tennessee Fair Housing Council and Tracey McCartney**

Please add this to my file.  Per the resume below (found on the web), it appears that Tracey McCartney has engaged in outside work as a fair housing/web content consultant for pay.  This would constitute the very "gross misconduct" she claims justified her termination of my employment from the Tennessee Fair Housing Council.

It follows that Tanya Gorham is registered with Keller Williams Realty, 9175 Carothers Parkway, Franklin, TN 37067 as a commercial real estate agent/broker.  That information is posted on the web along with other outside employment engagements under exploretalent.com (Talent No. 142930).  RealtyDataNetwork.com also lists Tanya as a Franklin, TN Real Estate Agent.  These are indications that Tanya has resumed her work in the real estate field while working for the Tennessee Fair Housing Council.

Again, I was fired for "gross misconduct" for (allegedly) engaging in work outside of my employment; McCartney and Gorham are openly doing the same and yet still work for that agency.

--- On **Sat, 1/14/12, Josette Chambers <*jchamberslaw@yahoo.com*>** wrote:

From: Josette Chambers <jchamberslaw@yahoo.com>
Subject: Lawsuit ~ Evidence of Tracey's Outside Practice
To: "Josette Chambers" <jchamberslaw@yahoo.com>
Date: Saturday, January 14, 2012, 12:31 PM

# Tracey McCartney

A place for my stuff
search [Submit Query]

- HOME
- About
- Contact
- Resume

- rss feed

2009
07.05

# Resume

Category:  / Tags: no tag / Add Comment
*Summary: I currently run the Tennessee Fair Housing Council, but I am available for out-of-*

EXHIBIT E

*state fair housing training and for consulting with fair housing organizations on content management web sites.*

**TRACEY MCCARTNEY**

**PROFESSIONAL EXPERIENCE**

**EMPLOYMENT**

**Executive Director, Tennessee Fair Housing Council**

Nashville, Tennessee

February 1998-present

As executive director, I am responsible for the management of the Council's personnel and budget as well as its responsibilities under its grants and agreements with outside organizations. I am chiefly responsible for the enforcement and outreach activities of the Council. Among my accomplishments at the Tennessee Fair Housing Council is the successful application for and completion of several large grants from the U.S. Department of Housing and Urban Development totaling almost $3 million.

As part of my duties at the Council, I train all personnel, including our test coordinator. I assist with training of testers and coordinate some of the Council's testing. Since joining the Council, I have coordinated, or supervised the coordination of, more than 400 tests of all kinds, including rental, real estate sales, lending and insurance.

**Enforcement Specialist, Central Alabama Fair Housing Center**

Montgomery, Alabama

September 1995-February 1998

As Enforcement Specialist, I was primarily responsible for coordinating testing and carrying out informal enforcement activities with housing providers. My law degree allowed me to take part in some of the litigation activities of the center, such as drafting complaints, motions and briefs. In addition, I was responsible for the computerized recordkeeping of cases and audit results and the upkeep of the Center's Internet presence. As part of my duties, I coordinated 200-250 rental, sales, insurance and lending tests.

**Senior Clerk, Alabama Disabilities Advocacy Program**

Tuscaloosa, Alabama

May 1993 August 1995

As a law clerk and advocate, I researched issues, wrote memos, drafted briefs, supervised student clerks and represented clients with disabilities seeking services to which they are entitled under state and federal law.

**Editorial Page Editor, *The Crimson White***

Tuscaloosa, Alabama

September 1992 – August 1993

As Editorial Page Editor, I researched and wrote the editorial column and laid out the editorial page for the University of Alabama's student run newspaper. I have also been a staff columnist writing biweekly on issues of computerized communication.

**Staff reporter, *The Montgomery Advertiser***

Montgomery, Alabama

March 1989 August 1992

I covered state education and politics, writing about a variety of complex and important issues, including a major education funding lawsuit, education reform and a rural hospital crisis.

**Correspondent, *The Birmingham News***

Auburn, Alabama

Sept. 1988 March 1989

I covered southeast Alabama, including Auburn University and Tuskegee University. Duties included general assignment, education and political reporting and photography.

**CONSULTING CLIENTS**

**NAMI Louisville**

Summer of 2009

As consultant to the Louisville, Ky., chapter of the National Alliance for the Mentally Ill, I installed and customized a Drupal-based content management web site and a module called CiviCRM that enabled the organization to receive donations and registrations for its annual walkathon online. My duties included mimicking the look and feel of their previous web site and making sure that all content from the previous site was available on the new one.

**Fair Housing Council of Suburban Philadelphia**
Summer of 2008
As a consultant to the Fair Housing Council of Suburban Philadelphia, I was responsible for coordinating a series of three Continuing Legal Education programs for the Delaware Community Legal Aid Society, a subcontractor of FHCSP under a HUD fair housing grant. The training was on fair housing and predatory lending. My work included identifying topics and speakers, coordinating training dates, arranging travel, gathering training materials and even attending to on-site needs such as food.

**Legal Services of Southern Missouri**
Summer of 2008
I provided fair housing training to attorneys, paralegals and others attending the organization's annual conference. I taught two sessions, both of which were evaluated highly by the attendees.

**EDUCATION**

**University of Alabama School of Law**
Tuscaloosa, Alabama
Juris Doctor, May 1995
Honors and activities:
Acting Editor-in-Chief/Lead Articles Editor, Law and Psychology Review
Recipient, 1995 Civil Liberties Union of Alabama Award
Best Oral Advocate, First Year Moot Court
Editor, The Column, 1993-94
Member, Alabama Public Interest Law Association
Lecturer, Street Law program

**Auburn University**
Auburn, Alabama
Bachelor of Arts in Journalism, minor in English
August 1988
Honors and activities:
Section editor, reporter and columnist, The Auburn Plainsman
Auburn University Marching Band
Worked almost full time to support self through college

**PROFESSIONAL AFFILIATIONS**
Member in good standing, Tennessee State Bar
Member in good standing, Alabama State Bar (inactive)
Certified Instructor, Tennessee Real Estate Educational Foundation, Inc.
Board member, Residential Resources, Inc.
Housing co-chair, NAACP Nashville Branch
Housing/Consumer Task Force Co-Chair, Tennessee Alliance for Legal Services

**WRITING**
A Place to Call Home: Addressing Opposition to Homes for People with Disabilities in Tennessee Neighborhoods (with Nancy Blomgren), available at
http://www.tennfairhousing.org/media/callhome.pdf
The Fair Housing Act: 35 Years of Evolution (with Sara Pratt), available at
http://fairhousing.com/include/media/pdf/35years.pdf

**RELEVANT SKILLS**
Highly computer literate
Confident public speaker and trainer
Effective and highly competent writer


No Comment.


Add Your Comment
Comments are closed.

## About this site

Technically this is a blog. However, having tried and failed several times to maintain a blog, I know better than to claim I'll be updating this one with any regularity or to think anyone would read it anyway. Rather, this is just a place for me to drop my random stuff and provide links to other places where I have a presence.

## Sites
- National Fair Housing Advocate Online
- Tennessee Fair Housing Council
- Video Gaming Refugees

## Meta
- Log in
- Entries RSS
- Comments RSS
- WordPress.org

© Tracey McCartney. Powered by WordPress and Pyrmont V2.
Bad Behavior has blocked **11** access attempts in the last 7 days.

TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
DIVISION OF EMPLOYMENT SECURITY

AVISO IMPORTANTE                    AGENCY DECISION                    AVISO IMPORTANTE

EMPLOYER:        CMC   0408/0408

CLAIMANT:        CMC   0408/0408        TN FAIR HOUSING COUNCIL
                                        ATTENTION EXECUTIVE DIRECTOR
JOSETTE M CHAMBERS                      107 MUSIC CITY CIR SUITE 3
6700 CABOT DRIVE D2                     NASHVILLE, TN 37214
NASHVILLE, TN 37209

CLAIMANT WAS DISCHARGED FROM MOST RECENT WORK.
THE CLAIMANT WAS DISCHARGED FOR ENGAGING IN AN OUTSIDE
PRACTICE OF LAW. THE EMPLOYER DID NOT WISH TO CONTEST CLAIM
BECAUSE THEY DID NOT FEEL CLAIMANT REALIZED HER ACTIVITIES
WERE INCONSISTENT WITH OFFICE POLICY.

THE EMPLOYER HAS NOT PROVIDED SUFFICIENT EVIDENCE TO PROVE THE
CLAIMANT'S ACTIONS CONSTITUTE WORK-RELATED MISCONDUCT.  THEREFORE,
UNDER TENNESSEE CODE ANNOTATED 50-7-303, BENEFITS ARE APPROVED
AS OF THE CLAIM DATE SHOWN BELOW.

APPEAL RIGHTS:  INTERESTED PARTIES HAVE THE RIGHT TO APPEAL THIS
DECISION WITHIN 15 CALENDAR DAYS OF DATE MAILED.  IF STATE OFFICES
ARE CLOSED ON THE FINAL DAY, THE NEXT BUSINESS DAY IS THE DEADLINE.
LATE APPEALS WILL ONLY BE ALLOWED IF YOU CAN SHOW, IN A HEARING,
THAT YOU HAD GOOD CAUSE.  FILE THE APPEAL BY MAIL TO TDLWD, APPEALS
TRIBUNAL, 220 FRENCH LANDING DR, NASHVILLE, TN 37243-1002 OR BY FAX
TO (615)741-8933.  THE CLAIMANT'S SOCIAL SECURITY NUMBER MUST APPEAR
ON ALL DOCUMENTS.  THE GUIDE FOR RECEIVING UI BENEFITS AND THE
EMPLOYER'S HANDBOOK CONTAIN ADDITIONAL INFORMATION.  THE CLAIMANT
MUST CERTIFY WEEKLY TO REMAIN ELIGIBLE FOR BENEFITS SHOULD FILING
AN APPEAL RESULT IN APPROVAL.  YOU MAY BE REPRESENTED BY AN ATTORNEY
OR ASSISTED BY ANY OTHER REPRESENTATIVE YOU CHOOSE.  IF YOU CANNOT
AFFORD AN ATTORNEY, FREE OR LOW COST LEGAL ASSISTANCE MAY BE
AVAILABLE THROUGH YOUR LOCAL LEGAL SERVICES ORGANIZATION OR BAR
ASSOCIATION.  WE CANNOT PROVIDE AN ATTORNEY FOR YOU.

SSN:              XXX-XX-6914        EMPLOYER RESPONSE: TIMELY
CLAIM DATE:       01/02/2012         RESPONSE RECEIVED: 01/09/2012
BYE:              01/05/2013
                                     LOCAL OFFICE:   0408/0408
DATE MAILED:      01/12/2012         ADJ OFF ST/DK:  1836

DES 232.10A       DC15
LB-0699                                          BP0190        507

JOINT EXHIBIT 1



# TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
## 220 FRENCH LANDING DRIVE
## NASHVILLE, TENNESSEE 37243-1002
## WAGE TRANSCRIPTION AND INITIAL MONETARY DETERMINATION

THIS IS YOUR MONETARY DETERMINATION. YOU COULD BE INELIGIBLE FOR BENEFITS DUE TO OTHER REASONS.

| DATE DETERMINED | LOCAL OFFICE | WEEKLY RETIR. DEDUCT | PROGRAM CODE | SOCIAL SECURITY ACCOUNT NUMBER |
|---|---|---|---|---|
| 01/02/12 | 0408 | 000 | 1 | XXX-XX-6914 |

JOSETTE M CHAMBERS
6700 CABOT DRIVE D2
NASHVILLE, TN 37209-4356

| DATE FILED | BASE PERIOD | | DATE BENEFIT YEAR ENDS |
|---|---|---|---|
| | FROM MO. DAY YR. | TO MO. DAY YR. | MO. DAY YR. |
| 01/02/12 | 10/01/10 | 09/30/11 | 01/05/13 |

YOU MAY EARN UP TO $68.75 WITHOUT REDUCING YOUR WEEKLY BENEFIT AMT OF $275.
YOU WILL RECEIVE DEPENDENT ALLOWANCE OF $15.

| QUARTERLY BASE PERIOD WAGES | | | | TOTAL BASE PERIOD WAGES PAID BY EACH EMPLOYER | EMPLOYER'S NAME | EMPLOYER'S NUMBER |
|---|---|---|---|---|---|---|
| 4/2010 | 1/2011 | 2/2011 | 3/2011 | | | |
| 12709.99 | 11960.02 | 11960.01 | 11269.98 | 47900.00 | TN FAIR HOUSING COUNCIL | 0484 888 |

| QUARTERLY TOTALS | | | | BASE PERIOD TOTALS | MAX. BEN. AMOUNT | WEEKLY AMOUNT | WEEKS ELIG. | | 1 |
|---|---|---|---|---|---|---|---|---|---|
| 12709.99 | 11960.02 | 11960.01 | 11269.98 | 47900.00 | 7150.00 | 275 | 26 | TENN. UNEMPLOYMENT COMPENSATION | |
| | | | | | | | | COMBINED - OTHER STATE(S) | |
| | | | | | | | | U.C. FEDERAL EMPLOYEES | |
| | | | | | | | | U.C. EXSERVICEPERSON | |

REASON YOU ARE NOT ELIGIBLE FOR MONETARY BENEFITS

☐ NO WAGE CREDITS ☐ INSUFFICIENT WAGE CREDITS ☐ OTHER

INFORMATION CONTAINED IN YOUR UNEMPLOYMENT INSURANCE CLAIM FILE MAY BE RELEASED TO OTHER GOVERNMENT AGENCIES, AS REQUIRED BY LAW.

000824

**IMPORTANT** IF THE WAGES SHOWN ON THIS TRANSCRIPT ARE NOT YOUR CORRECT BASE PERIOD WAGES OR IF YOU HAVE QUESTIONS, CONTACT THE LOCAL LABOR AND WORKFORCE DEVELOPMENT OFFICE. (SEE REVERSE SIDE FOR WAGE PROTEST.)

**WARNING** BE SURE YOU REPORT ALL OF YOUR EARNINGS FOR EACH WEEK YOU CLAIM BENEFITS.
SEVERE PENALTIES ARE PROVIDED FOR MAKING FALSE STATEMENTS OR FAILURE TO DISCLOSE MATERIAL FACTS TO OBTAIN OR INCREASE BENEFITS.

iP0081