IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSETTE M. CHAMBERS, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>)<br>TENNESSEE FAIR HOUSING COUNCIL, )<br>et al, )<br>      Defendants. ) | Case No. 3:12-0190<br><br>Judge Trauger<br>Magistrate Judge Bryant |

To: The Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

By Order entered February 21, 2012 (Docket Entry No. 4), this matter was referred to the undersigned for case management and to recommend ruling on any dispositive motions.

Plaintiff, Josette Chambers, filed this action *pro se* and *in forma pauperis* under, inter alia, Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000(e), and 42 U.S.C. § 1981. The Plaintiff names her former employer, Tennessee Fair Housing Council ("TFHC"), and her former supervisor at TFHC, Tracey McCartney as defendants. Plaintiff seeks relief of lost income and benefits from defendants, alleging workplace discrimination based on race;

1

harassment and intimidation; retaliation against plaintiff for discussing discrimination claims with HUD officials; and wrongful termination.

## II.  Factual Background

The amended complaint (Docket Entry No. 12 at 4-10) alleges the following facts:

The plaintiff is an African-American female who was hired as a staff attorney by defendants TFHC and McCartney in March 2009. Plaintiff's job duties consisted of advocacy and legal representation of TFHC complainants alleging housing discrimination. <u>Id.</u> Defendant, Tracey McCartney, a Caucasian female, is the Executive Director of TFHC and was plaintiff's immediate supervisor. Plaintiff claims she was subjected to a racially hostile work environment from the beginning of her employment. Plaintiff alleges that McCartney discussed the "incompetency" of African-American women working in the housing discrimination arena and stated her intention to cause their professional demise. McCartney allegedly informed plaintiff that she was mishandling a housing discrimination case by improperly drafting a management order. McCartney informed her that her actions constituted malpractice. Despite this mismanagement, plaintiff was able to win a $70,000 settlement award for TFHC's client in that case.

In November 2009, plaintiff was diagnosed with breast cancer and the cancer metastasized to her brain in June 2011. Despite this diagnosis and subsequent treatments, plaintiff remained able to perform her duties as a staff attorney.

2

Plaintiff claims she was subject to constant harassment and damaging "write-ups" in her personnel file by McCartney. McCartney also is alleged to have changed plaintiff's core job duties to require her to perform a significant portion of the office manager's clerical, data entry work, while the nonlawyer officer manager was given a significant portion of plaintiff's attorney duties to perform. In July 2011, plaintiff was told by the officer manager that McCartney was "concerned" that plaintiff's cancer treatments had caused TFHC's insurance costs to rise. In July 2011, a HUD auditor visited TFHC to discuss previous complaints concerning workplace discrimination at TFHC. In a meeting with the auditor, plaintiff was discussing the treatment she was receiving from McCartney when McCartney burst through the door and accused plaintiff of "assassinating her character." Subsequently, on July 25, 2011, McCartney presented a memorandum to plaintiff listing charges of "gross misconduct" on the part of the plaintiff. Plaintiff was put on paid suspension until August 2011. Plaintiff was advised by board members of TFHC to file a grievance.

Before plaintiff could file a grievance, McCartney mandated that plaintiff attend a mediation meeting to be set in August 2011. McCartney advised plaintiff that her failure to participate would result in an immediate "parting of the ways." Plaintiff complied with McCartney's requests including signing the Second Amended Separation Agreement which set her termination date for December 31, 2011, and which required that she not set foot on TFHC premises between the August 2011 mediation and her effective termination date.

Plaintiff was required to work from home during this time and only communicated with McCartney via email. Plaintiff's employment with TFHC ended on December 31, 2011.

### III. Legal Conclusions

#### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-plead factual allegations as true. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Although Fed. R. Civ. P. 8(a)(2) requires merely "a short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). He must plead well enough to ensure that his complaint is more than "a formulaic recitation of the elements of a cause of action." <u>Id.</u> At 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." <u>League of United Latin American Citizens v. Bredesen</u>, 500 F.3d 523, 527 (6th Cir. 2007). Nevertheless, the court need not accept legal conclusions or unwarranted factual inferences as true, <u>Iqbal</u>, 556 U.S. at 677-78; <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987), and a complaint containing mere legal conclusions alone will "not unlock the doors of discovery for a plaintiff." <u>Iqbal</u>, 556 U.S. at 678. A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. <u>Twombly</u>, 550 U.S. at 556.

4

B.  Analysis of Defendant's Motion

The defendants seek to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants claim that this motion should be granted on account of the fact that the plaintiff released and waived all aspects of her claims when she signed the Second Amended Separation Agreement. Defendants claim that the language of the Agreement makes it clear that plaintiff has waived all rights to assert these claims against the defendants.

A motion to dismiss can be premised on an affirmative defense if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." Marsh v. Genentech, Inc., 693 F.3d 546, 554-55 (6th Cir. 2012). A motion to dismiss will be granted where the undisputed facts conclusively establish an affirmative defense as a matter of law. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009). In In re Colonial Mortgage Bankers Corporation, the First Circuit Court of Appeals held that a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are "definitively ascertainable from the allegations of the complaint" and they "conclusively establish the affirmative defense." 324 F.3d 12, 16 (1st Cir. 2003). In Hensley Manufacturing v. ProPride, Inc., the Sixth Circuit Court of Appeals examined a motion to dismiss that was granted based upon the affirmative defense of fair use. Hensley, 547 F.3d at 613. The Court found that the facts alleged in the plaintiff's complaint by plaintiff demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law.

5

Id. Furthermore, the Court found that mere speculation to the contrary is insufficient and plaintiff has the burden to allege sufficient facts to advance the case past the pleading stage. Id.

Here, plaintiff's amended complaint alleged that defendant, McCartney, advised plaintiff that her failure to participate in mediation would result in an immediate "parting of ways." (Docket Entry No. 1 at 9). Allegedly, fearful of losing her salary and medical benefits needed to pay for her ongoing medical treatment for cancer, plaintiff complied with the requirement by defendant McCartney that their dispute be mediated. Given her condition, plaintiff claims to have felt she had no other choice but to agree to participate in the mediation. The amended complaint presents allegations calling into question the voluntariness of the waiver due to plaintiff's economic duress, rather than conclusively establishing the affirmative defense of waiver as a matter of law.

Economic duress has been defined as "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another." Cumberland & Ohio Co. of Texas, Inc. v. First American Nat. Bank, 936 F.2d 846, 850 (6th Cir. 1991). It is alleged here that plaintiff was acting under duress when she decided to submit to the mediation, and when she signed the mediation

agreement.[1] Plaintiff alleges she was still receiving medical care and needed a salary and benefits in order to pay for her treatments, and that she thus felt she had no choice but to sign the agreement. Deeming these well-pleaded allegations true as the Court must on a motion to dismiss, the plaintiff has alleged enough facts against the defendant to plausibly state a claim sufficient to withstand the motion under Fed. R. Civ. P. 12(b)(6). As such, the undersigned concludes that the motion should be denied.

### IV. Recommendation

For the reasons stated herein, the undersigned hereby recommends that defendant's motion to dismiss for failure to state a claim (Docket Entry No. 14) be DENIED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of

---

[1] In her Amended Response to Defendants Motion to Dismiss, plaintiff mentioned she was not allowed to present her side of the case due to defendant's conduct during the mediation. (Docket Entry No. 32-2). During the mediation meeting, defendant McCartney allegedly stopped the meeting and packed her briefcase and tried to leave the room when plaintiff began to present her side of the case. Id. Given McCartney's earlier statement, plaintiff felt that if McCartney stopped mediation, plaintiff would be terminated and lose with her salary and medical benefits immediately; or, plaintiff could sign the agreement and retain her salary and medical benefits for a period of time.

7

Case 3:12-cv-00190  Document 34  Filed 02/21/13  Page 7 of 8 PageID #: 184

this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 21st day of February, 2013

                                                <u>s/John S. Bryant</u>
                                                JOHN S. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE